1  KAREN P. HEWITT
   United States Attorney
2  CHARLOTTE E. KAISER
   Assistant United States Attorney
3  California Bar Number 256356
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-7031
   Facsimile: (619) 235-4716
6
   Attorneys for Plaintiff
7  United States of America

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA,         )   Case No.  08CR1081-BTM
                                     )
12                                   )   **UNITED STATES' RESPONSE AND**
                                     )   **OPPOSITION TO DEFENDANT'S**
13                                   )   **MOTIONS TO:**
                Plaintiff,           )
14                                   )   **(1)   DISMISS FOR GRAND JURY**
        v.                           )         **VIOLATION;**
15                                   )   **(2)   COMPEL**
                                     )         **DISCOVERY/PRESERVE**
16                                   )         **EVIDENCE;**
   OMAR JAVIER LARA,                 )   **(3)   GRANT LEAVE TO FILE**
17                                   )         **FURTHER MOTIONS.**
                                     )
18                                   )
                                     )
19              Defendant.           )   Date:      July 25, 2008
                                     )   Time:      2:00 p.m.
20                                   )   Honorable: Barry T. Moskowitz
                                     )
21

22      Plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States

23 Attorney, and Charlotte E. Kaiser, Assistant United States Attorney, hereby files its Response and

24 Opposition to Defendant's Motion for Discovery. This Response and Opposition is based upon the files

25 and records of the case together with the attached statement of facts and memorandum of points and

26 authorities.

27 ///

28 ///

**I**

**STATEMENT OF FACTS**

On February 28, 2008 at approximately 11:45 a.m., San Diego police apprehended Defendant Omar Javier Lara (Lara) outside of a Longs Drugs store located at 3950 West Point Loma Boulevard in San Diego, California. At the time, police received information that Lara flashed a firearm at Longs Drug Store employee Mario Baeza (Baeza). Specifically, the series of facts leading to Defendant's apprehension are as follows:

Baeza was eating at a Denny's restaurant near his place of employment, Longs Drug store. He sat in a booth at the back of the restaurant, close to the restrooms. He observed Lara walk up to the front counter to pay his bill. While there, Lara turned in Baeza's direction and Baeza was able to spot something glitter in Lara's waistband. Lara then paid his bill and walked towards the restroom in Baeza's direction. As Lara walked past Baeza, he slowed his pace and looked at Baeza. Lara then pulled back his jacket and Baeza saw a silver or chrome colored gun with a brown handle and thought it looked like a small caliber semi-automatic pistol. When Lara went into the restroom, Baeza stepped outside of the restaurant to call the police. A surveillance camera in the Denny's restaurant produced to Lara's counsel captures this chain of events.

Baeza called the police from the parking lot outside of the Denny's restaurant. As Baeza was speaking with the police, Lara walked out of the Denny's restaurant and towards the Baeza's place of employment, the Longs Drug store. Lara walked a few feet away from Baeza in the parking lot. Yet again, Lara looked at Baeza and showed his gun under his jacket. Both times Lara showed his gun to Baeza, Baeza felt like Lara was: "Mad Doggin me" and that "he was going to pull [the gun] out and start cappin me."

Lara then walked into the Longs Drug store. On seeing him head towards the Longs Drug store, Baeza called his colleague at the Longs Drug store to warn about Lara. As camera footage in the store shows, Lara mulled around the store. At one point, Lara entered a restroom behind the pharmacy counter while an elderly woman and her companion were at the counter. He then exited the restroom and went into an aisle. Thereafter, Lara sat in a chair near the pharmacy counter and was on his mobile phone. After some time, Lara exited the store and the police officers then arrested him. During his arrest, the

1 police looked at Lara's mobile phone and saw that he had dialed an individual named Jessica on his
2 mobile phone. At that point, they located a young woman outside the store and were able to identify her
3 as the Jessica whom Lara called on his phone. Through Jessica, the police officers learned that she was
4 Lara's girlfriend and that she spoke with him when he was in the store. According to Jessica, although
5 they did not speak about a firearm, Lara asked her to come to the store because there were cops
6 surrounding it.

7 After Lara's arrest, the police reviewed the camera footage in the Longs Drug store, which also
8 was produced to Lara's counsel. The police saw that Lara entered a certain aisle after he exited the
9 restroom near the pharmacy counter. A police officer entered that aisle and saw a shelf of children's
10 lunch containers. He picked up one container and then a second one, known as an Arctic Zone
11 children's lunch container. He noticed the Arctic Zone children's lunch container felt heavier than the
12 other one. Inside the Arctic Zone children's lunch contain, the police officer located a firearm that
13 matched Baeza's description. The firearm was loaded with the six rounds of ammunition.

**II**

**UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS**

**A.   THE GRAND JURY WAS NOT MIS-INSTRUCTED**

Defendant moves to dismiss the indictment against him for alleged errors in the Court's instruction of the grand jury panel. The United States explicitly incorporates by reference the briefing on this issue submitted in United States v. Martinez-Covarrubias, 07CR0491-BTM, and United States v. Bermudez-Jimenez, 07CR1372-JAH. This motion has been denied by each court that has considered it. See, e.g., October 11, 2007 Order in United States v. Martinez-Covarrubis, 07CR0491-BTM (Docket Number 30); United States v. Bermudez-Jimenez, 07CR1372-JAH, 2007WL 4258239 (S.D. Cal. Dec. 3, 2007). For the same reasons relied on by those Courts, this Court should denied the motion.

**B.   AN ORDER COMPELLING DISCOVERY IS UNNECESSARY**

The United States has produced 102 pages and 3 compact discs of discovery as of the filing of this response. The United States has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act, 18 U.S.C. § 3500, and Federal Rule of Criminal Procedure 16. Because the United States has complied and will comply with its

discovery obligations, an order to compel discovery is unwarranted and the request for such an order should be denied.

1. Lara's Statements

The United States has provided defense counsel with reports that concern Lara's statements to San Diego police officers at the time of his arrest as well as to the Alcohol, Tobacco and Firearm (ATF) agent at the time that the ATF agent took him into federal custody.

2. Arrest Reports, Notes, and Dispatch Tapes

The United States has provided Lara with the reports related to his arrest in this case. The United States is in the process of locating any 911 or dispatch tapes related to the arrest.

The United States also has no objection to the preservation of the handwritten notes taken by any of the United States' agents that are available at this time. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). The United States, however, objects to providing Lara with a copy of any available rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The United States is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case probably do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Lara that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27

F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Lara.

3. Brady Material

The United States will comply with its obligations to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963). Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the government need not disclose "every bit of information that might affect the jury's decision." United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001). Impeachment evidence may constitute Brady material "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted).

4. Information that May Result in a Lower or Higher Sentence Under the Guidelines

The United States is unaware of any mitigating information in this case, and recognizes that Lara's lengthy history of criminal violations is aggravating information. The United States has produced Lara's conviction documents related to underlying felony for the Indictment. The United States also produced the transcript of the preliminary hearing for the underlying felony but also will seek to obtain the transcript from Lara's plea colloquy.

5. Lara's Prior Record

The United States has provided Lara with a copy of all documents relating to Lara's prior criminal record within its possession, custody, or control and, consequently, has fulfilled its duty of discovery under Rule 16(a)(1)(D). See United States v. Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990). Should the United States receive more documents related to Lara's prior record, it will produce those documents to Lara.

6. Any Proposed 404(b) and 609 Evidence

The United States will disclose in advance of trial the general nature of any "other bad acts" evidence that it intends to introduce at trial pursuant to Federal Rule of Evidence 404(b), as well as any

prior convictions it intends to use as impeachment pursuant to Rule 609.  The discovery materials include charging and conviction documents from Lara's felony conviction addressed in the Indictment.

      7.     <u>Evidence Seized</u>

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Lara an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Lara's defense, or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Lara.

The United States need not, however, produce rebuttal evidence in advance of trial.  <u>United States v. Givens</u>, 767 F.2d 574, 583-84 (9th Cir. 1984).

      8.     <u>Preservation of Evidence</u>

The United States will preserve all evidence to which Lara is entitled to pursuant to the relevant discovery rules of which is within the United States' possession, custody or control.  The United States objects to a blanket request to preserve all physical evidence.  The physical evidence will included but not necessarily be limited to the firearm, the ammunition, the children's lunch container, Lara's mobile phone, and the camera footage in the Longs Drug Store and the Denny's restaurant.  In addition, the United States is testing the firearm for physical analysis but has not received the results.  The United States also is in the process of requesting the 911 and dispatch tapes related to Lara's arrest by the San Diego police.  There are no other obvious items of physical evidence to preserve at this time.

      9.     <u>Tangible Objects</u>

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Lara an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Lara's defense, or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Lara.

Indeed, the United States already provided Lara with a CD that contained photographs of the firearm and the firearm located in the children's lunch container.  If color photographs will be used at trial, Lara will receive copies in advance.

10. <u>Evidence of Bias or Motive to Lie</u>

Lara requests evidence showing bias or prejudice against Lara or evidence of prospective Government witnesses who have a motive to falsify or distort their testimony. The United States recognizes its obligation to provide information related to the prejudice, bias or other motive to slant testimony of trial witnesses, as mandated in <u>Napue v. Illinois</u>, 360 U.S. 264 (1959). At this time, the United States does not have information of any prospective witness who is biased or prejudiced against Lara or who has a motive to falsify or distort his or her testimony. Should the United States receive such information, it will abide by its discovery obligations to Lara.

11. <u>Impeachment Evidence</u>

The United States acknowledges its obligation to provide impeachment information about its witnesses that meets the relevant standard of materiality, i.e., "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." <u>Blanco</u>, 392 F.3d at 387. The United States has or will comply with its obligation.

12. <u>Evidence of Criminal Investigation of Government Witnesses</u>

The United States recognizes and will comply with its obligations under the case law and discovery rules to disclose exculpatory information and impeachment information. To the extent such disclosures are not required by the case law and rules, the United States opposes Lara's broad request for evidence of any investigations into prospective witnesses by federal, state or local authorities for any criminal conduct, regardless of the outcome of the investigations. Moreover, as discussed above, the United States has no obligation to disclose information not within its possession. See <u>United States v. Gatto</u>, 763 F.2d 1040, 1048 (9th Cir. 1985); <u>United States v. Aichele</u>, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); <u>United States v. Chavez-Vernaza</u>, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); cf. <u>Beavers v. United States.</u>, 351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

13. <u>Evidence Affecting Perception, Recollection, Ability to Communicate</u>

1    The United States does not have information at this time of a prospective witnesses' physical
2 ability to perceive, recollect or communicate or commitment to tell the truth is impaired.  The United
3 States opposes the request for information that a witness was subject to any medical or psychiatric report
4 or evaluation related to perception or truthfulness as it is over broad in that the request is not subject to
5 any time or geographical restraints or otherwise related to the circumstances involving the instant
6 offense.  Moreover, the United States opposes the request for information that a witness has ever used
7 narcotics or other controlled substances, or has ever been an alcoholic.  This request also is over broad
8 as it is not subject to any time or geographical restraints or otherwise does not relate to events
9 surrounding the instant offense and ignores the standard of materiality set forth in <u>Brady</u> for exculpatory
10 or impeachment information.

11    14.    <u>Witness Addresses</u>

12    The United States will provide the names of the witnesses it intends to call at trial.  Lara has
13 already received access to the names of potential witnesses through the discovery sent to his counsel and
14 now knows that these individuals work at a Denny's restaurant, a Longs drug store and with the San
15 Diego police.  The United States, however, objects to Lara's request for witnesses' personal/home
16 addresses as the United States is not required to do so.  Indeed, given one witness, Baeza, believed Lara
17 flashed his gun to him on two occasions and the other potential witnesses are police officers and private
18 individuals, the United States strongly objects to this request not only due to privacy concerns abut also
19 safety concerns.

20    15.    <u>Name of Witnesses Favorable to Lara</u>

21    As indicated above, the United States will comply with its discovery obligations to produce
22 information that is exculpatory to Lara.  Indeed, it produced the reports that show Lara's girlfriend
23 indicated they did not speak about a firearm while he was in the store.  To the extent that the United
24 States discovers any more information, the United States will provide information.

25    16.    <u>Statements Relevant to Defense</u>

26    The United States has produced and will produce any statements relevant to defense that comport
27 with the other requests addressed herein.  Nevertheless, the United States objects to Lara's request that
28 the United States disclose any statement relevant to "any possible defense or contention" Lara may assert

in that, notwithstanding the other requests made by Lara at this time, the United States is not privy to Lara's trial strategies or otherwise is responsible for defending Lara where it must put forward its case against him. Where the interests of justice so require, the United States has produced and will continue to produce relevant materials to Lara.

17.  Jencks Act Material

The United States has and will comply with the disclosure requirements of the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). By the same token, rough notes by an agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

18.  Giglio Information

The United States will comply with the requirements of Giglio v. United States, 405 U.S. 150 (1972). At this time, the United States is unaware of any promises in exchange of testimony by its prospective witnesses.

19.  Reports of Scientific Tests or Examinations

As indicated above, the United States submitted the firearm for physical analysis but has not obtained the results. Once it obtains the results during the pendency of these proceedings, the United States will produce them to Lara.

20.  Henthorn Material

The United States will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and will request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate

standard of materiality. <u>United States v. Booth</u>, 309 F.3d 566, 574 (9th Cir. 2002)(citing <u>United States v. Jennings</u>, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an <u>in camera</u> inspection and review.

<u>Henthorn</u> expressly provides that it is the "government," not the prosecutor, which must review the personnel files. <u>Henthorn</u>, 931 F.2d at 30-31. Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting designated representatives of the relevant agencies to conduct the reviews. As such, the United States will oppose any request for an order that the prosecutor personally review the personnel files.

Finally, the United States notes that several prospective witnesses are local police officers or private citizens and as such, the United States may be unable to access to such information related to those individuals.

21. <u>Informants and Cooperating Witnesses</u>

At this time, the United States is not aware of any confidential informants or cooperating witnesses involved in this case. The government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. <u>Roviaro v. United States</u>, 353 U.S. 53, 59 (1957). These threshold requirements have been interpreted to require that, if any cooperating witnesses or informants were involved or become involved, Lara must show that disclosure of the informer's identity would be "relevant and helpful" or that the informer was the sole percipient witness before he would even be entitled to an in-camera evidentiary hearing regarding disclosure of the informer's identity. <u>United States v. Jaramillo-Suarez</u>, 950 F.2d 1378, 1386-87 (9th Cir. 1991), <u>quoting</u> <u>Roviaro</u>, 353 U.S. at 60. Any bias issues will be handled pursuant to <u>Brady</u>.

22. <u>Expert Witnesses</u>

The United States will comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Lara with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence.

23. <u>Residual Request</u>

As stated above, the United States will comply with its discovery obligations in a timely manner.

## III

## LEAVE TO FILE FURTHER MOTIONS

The United States does not oppose Lara's request for leave to file further motions, so long as such motions are based on discovery not yet received by Lara.

## IV

## UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY

Lara has invoked Fed. R. Crim. P. 16(a) and the United States has voluntarily complied with the requirements of Rule 16(a). Therefore, provision 16(b) of that rule, requiring reciprocal discovery, is applicable. The United States hereby requests Lara to permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Lara and which he intends to introduce as evidence in his case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Lara, which he intends to introduce as evidence-in-chief at the trial or which were prepared by a witness whom Lara intends to call as a witness. The United States also requests that the Court make such orders as it deems necessary under Rule 16(d)(1) and (2) to insure that the United States receives the discovery to which it is entitled.

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all witnesses, except Lara. The time frame established by the rule requires the statement to be provided after the witness has testified, as in the Jencks Act. The United States hereby requests that Lara be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. This order should include any form these statements are memorialized in, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

//
//
//
//

**V**

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that Lara's motions, except where not opposed, be denied and the United States' motion for reciprocal discovery be granted.

DATED: July 18, 2008

                                            Respectfully Submitted,

                                            KAREN P. HEWITT
                                            United States Attorney

                                            /s/ Charlotte E. Kaiser

                                            CHARLOTTE E. KAISER
                                            Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR0800-BEN |
| Plaintiff, | ) | |
| v. | ) | **CERTIFICATE OF SERVICE** |
| OMAR JAVIER LARA, | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED that:

I, CHARLOTTE E. KAISER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101.

I am not a party to the above-entitled action. I have caused service of RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR GRAND JURY VIOLATION, COMPEL DISCOVERY/PRESERVE EVIDENCE AND GRANT LEAVE TO FILE FURTHER MOTIONS on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies:

Norma A. Aguilar, Attorney for Defendant

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 18, 2008.

/s/ Charlotte E. Kaiser
CHARLOTTE E. KAISER