**NORMA AGUILAR**
California State Bar No. 211088
**DAVID M.C. PETERSON**
California State Bar No. 254498
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California  92101-5008
Telephone:  (619) 234-8467
norma_aguilar@fd.org
david_peterson@fd.org

Attorneys for Mr. Lara

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE BARRY T. MOSKOWITZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.:  08cr1081-BTM |
| Plaintiff, ) | Date:    June 27, 2008 |
| ) | Time:    2:00 p.m. |
| v. ) | |
| OMAR JAVIER LARA, ) | **STATEMENT OF FACTS AND POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS** |
| Defendant. ) | |

**I.**

**STATEMENT OF FACTS**[1]

On February 28, 2008, Mr. Lara was arrested by San Diego Police Officers, following reports that he had been carrying a firearm. See San Diego Regional Officer's Report Narrative (Attached Hereto as Exhibit A). Officer Acosta took Mr. Lara into custody. See id. Thereafter, he "asked [Lara] if he knew why we were arresting him." Id. Mr. Lara responded to this question. Id. Officer Lara continued this line of questioning: "I told him that we were more concerned about a gun he reportedly had in his waist." Id. In response, Mr. Lara made further statements. Id. Officer Acosta "advised Lara there was an elementary school within 1100 feet of our location and if a child or anyone else were to gain access to that weapon, he could be facing more serious charges." Id. Lara again made statements. Id. Officer Acosta "explained to

---

[1] Mr. Lara reserves the right to take a contrary position to the statement of facts as additional discovery is provided

1  Lara that we believed he did have a gun and that there were witnesses that told us he had a gun and that we
2  believe he hid the gun somewhere inside the Long's drug store." Id. Lara made further statements. Id.
3  Thereafter, a gun was located. At that point, officer Acosta admonished Mr. Lara as to his Miranda rights.
4  See id. While Mr. Lara at first stated that he would talk with officer Acosta, he later invoked his right to
5  remain silent. See Id. On April 16, 2008, the January 2007 Grand Jury indicted Mr. Lara of Felon in
6  Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

## II.

## THE STATEMENTS SHOULD BE SUPPRESSED FOR FAILURE TO COMPLY WITH MIRANDA.

The Supreme Court's holding in Miranda v. Arizona, 384 U.S. 436 (1966), precludes the evidentiary use of statements resulting from a custodial interrogation unless the suspect has been first advised of his or her constitutional rights. Miranda at 444. Mr. Lara was subjected to an interrogation while in custody without the benefit of Miranda warning. Therefore, his statements in response must be suppressed.

**A.     The Statements Were Taken During Interrogation.**

"[T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (footnote omitted). There can be no doubt that Officer Acosta's initial question ("Do you know why we're arresting you?") was express questioning falling directly under the purview of Miranda. His questioning was designed to elicit an incriminating response. See, e.g., Pirtle v. Lambert, 150 F.Supp.2d 1078 (E.D.Wash. 2001) (state court's finding that asking defendant if he knew why he was under arrest was not custodial interrogation under Supreme Court jurisprudence), overruled on other grounds by Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002). Statements following therefrom must be suppressed.

Officer Acosta continued in his flagrant Miranda violation, however, when he transitioned from express questioning to statements that were designed to elicit an incriminating response. First, he stated "we [are] more concerned about a gun [Lara] reportedly had in his waist." See Exh. A. This was designed to elicit an incrimination response. As the Supreme Court has held:

> Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

Rhode Island v. Innis, 446 U.S. 291, 300-301(1980). An accusation of guilt is necessarily designed to elicit a response. Of course, it is no matter that the response sought in the end is technically "exculpatory," for under Innis, "incriminating response" refers to "any response–whether inculpatory or exculpatory–that the prosecution may seek to introduce at trial." Id. at 301 n. 5. Statements following therefrom must be suppressed.

Next, Officer Acosta continued in a tradition of eliciting responses that has long been forbidden by the Supreme Court, by advising Mr. Lara that there was a school nearby, and that children could be hurt. See Exh. A. Officer Acosta gave the functional equivalent of the classic "Christian burial speech" prohibited by the Supreme Court as custodial interrogation since 1977. Brewer v. Williams, 430 U.S. 387, 392 (1977). Statements following therefrom must be suppressed.

Finally, Officer Acosta confronted Mr. Lara with evidence of his guilt, stating that the police believed he did have a gun and that there were witnesses. This further elicited a response from Mr. Lara.. See Exh. A. Even a question as simple as asking someone their name, when combined with confrontation as to their guilt, constitutes interrogation. United States v. Poole, 794 F.2d 462, amended, 806 F.2d 853 (9th Cir. 1986) (asking detainee his name was interrogation in the context of a coercive interview where officer confronted detainee with evidence implicating him in a bank robbery and should have anticipated a defensive response). Following express questioning, an accusation of guilt, reference to punishment and danger to children, Officer Acosta's final statement continued in this un-Mirandized interrogation, in a flagrant attempt to elicit an incriminating response. Innis, 446 U.S. at 300-01.

**B.    The Statements Were Taken While Mr. Lara Was In Custody.**

Officer Acosta acknowledges in his report that the statements were taken after he arrested Mr. Lara: "After taking Lara into custody, I asked him if we knew why we were arresting him." See Exh. A.

The Supreme Court has long held that a person is in custody when, under the totality of circumstances, "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112 (1995); see also Berkemer v. McCarty,

468 U.S. 420, 442 (1984) (holding that "the only relevant inquiry [to determine whether a suspect was 'in custody'] is how a reasonable man in the suspect's position would have understood his situation"). The Ninth Circuit case law has further elaborated the "totality of circumstances" inquiry by identifying several factors that are relevant to the "in custody" determination.

Pertinent areas of inquiry include:

[1] the language used by the officer to summon the individual, [2] the extent to which he or she is confronted with evidence of guilt, [3] the physical surroundings of the interrogation, [4] the duration of the detention and [5] the degree of pressure applied to detain the individual.

United States v. Beraun-Panez, 812 F.2d 578, 580 (9th Cir.), modified by 830 F.2d 127 (9th Cir. 1987); see also Hayden, 260 F.3d at 1066.

Other factors may also be pertinent to, and even dispositive of, the ultimate determination whether a reasonable person would have believed he could freely walk away from the interrogators; the Beraun-Panez/Hayden factors are simply ones that recur frequently. United States v. Kim, 292 F.3d 969 (9th Cir. 2002). Based upon a review of all the pertinent facts, the court must determine whether a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave. United States v. Booth, 669 F.2d 1231, 1235 (9th Cir. 1981). Here there is a candid acknowledgment by the arresting officer that the interrogation occurred following Officer Acosta'a arrest of Mr. Lara.

**C.     No *Miranda* Warnings Were Given Until After Interrogation.**

Officer Acosta memorialized precisely when he admonished Mr. Lara of his rights in his report. See Exh. A. It occurred after the questioning and statements described above. In addition, the content of the questions were designed to elicit incriminating information about the whereabouts of the gun, and Officer Acosta states that he did not admonish Mr. Lara as to his rights until "[a]fter the gun was located." See Exh. A. Because the Miranda warnings followed this custodial interrogation, also statements must be suppressed.

**III.**

**MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS.**

Defense counsel requests leave to file further motions and notices of defense based upon information gained in the discovery process.

## IV.
## **CONCLUSION.**

For these and all the foregoing reasons, Mr. Lara respectfully requests that this Court grant his motions and grant any and all other relief deemed proper and fair.

                                                          Respectfully submitted,

DATED: July 23, 2008            */s/ David M.C. Peterson*
                                       NORMA AGUILAR
                                       DAVID M.C. PETERSON
                                       Federal Defenders of San Diego, Inc.
                                       Attorneys for Mr. Lara
                                       norma_aguilar@fd.org
                                       david_peterson@fd.org

**APPENDIX OF EXHIBITS**

<u>United States v. Jose Juan Lara</u>

08CR1081-BTM

Exhibit A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . San Diego Regional Officer's Report Narrative

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing is true and accurate to the best information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

Courtesy Copy to Chambers

Copy to Assistant U.S. Attorney via ECF NEF

Copy to Defendant

Dated: July 24, 2008            /s/ DAVID M. PETERSON
                                Federal Defenders of San Diego, Inc.
                                225 Broadway, Suite 900
                                San Diego, CA  92101-5030
                                (619) 234-8467  (tel)
                                (619) 687-2666  (fax)
                                David_Peterson@fd.org (email)